UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:15-cr-00182 |
| | ) | JUDGE CRENSHAW |
| JERRY CHRISTOPHER BOSTICK | ) | |

## GOVERNMENT'S TRIAL BRIEF

COMES NOW the United States of America, by and through the undersigned Assistant U.S. Attorney, and hereby submits the following brief addressing the following three issues: (1) whether the Government may introduce into evidence a firearm magazine that is not referenced in the Indictment; (2) legal authority on the definition of machinegun; and (3) legal authority regarding the Government's use of Mr. Bostick's alleged proffer. For the reasons outlined below, it is the position of the Government that the Court should allow into evidence the magazine; that the Court should include the statute's full definition of machinegun; and that – under certain circumstances – the Government can use Mr. Bostick's proffer at trial.

I. **LEGAL AUTHORITY REGARDING THE GOVERNMENT INTRODUCING INTO EVIDENCE A FIREARM MAGAZINE THAT IS NOT REFERENCED IN THE INDICTMENT.**

Pursuant to the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Supreme Court has recognized district courts' "wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984).

To sustain a conviction under 26 U.S.C. § 5861(d), the government must prove the

defendant "knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." *Staples v. U.S.*, 511 U.S. 600, 602. At trial, the defense will likely argue that the defendant lacked "knowledge" that the seized German, Model MP-40, 9mm caliber sub-machine and the U.S. Guide Lamp, model M3, .45 caliber sub-machinegun are automatic weapons. The defense expert, Daniel G. O'Kelly, prepared a report and concluded that "it is reasonable to believe that Mr. Bostick was unaware that these two firearms have the capability to fire in a fully-automatic mode." One of Mr. O'Kelly's explanations for reaching this conclusion is that both machineguns "are both available as fakes."

The German, Model MP-40, 9mm caliber sub-machinegun had an attached magazine that was visible, and the magazine is an object relevant to proving whether the defendant knew the gun was a "real" firearm, as opposed to a "fake." The limited case law on the introduction of firearm magazines in analogous cases would indicate such relevance is readily apparent. That said, in *United States v. Stevens*, the court found proper the government's introduction of shotgun shells to support the alleged illegal possession of the shotgun itself, noting in particular "[e]xistence of the knowledge element [of possessing the shotgun was] made more probable by the evidence of the shells than it would [have been] if there had been no shells." *United States v. Stevens*, 595 F.2d 569, 571 (10th Cir. 1979). Likewise, the fact that the magazine was visibly present and attached to the MP-40 is relevant and probative that the defendant knew the MP-40 is a real, fully automatic weapon. Therefore, the Court should allow the government to introduce the magazine into evidence at trial.

    II.    **LEGAL AUTHORITY ON THE DEFINITION OF MACHINEGUN**

Rule 30 of the Federal Rules of Criminal Procedure governs jury instructions and allows the parties an opportunity to request specific instructions on the law that is given to the jury. Fed.

R. Crim. P. 30(a). By providing the Court with a specific instruction, the Court is notified of pretrial issues and afforded time to make an informed decision on how to advise the jury. *United States v. Jake*, 281 F.3d 123 (3rd Cir. 2002). Prior to the parties' closing arguments, the Court must inform the parties how the Court intends to rule on the requested instructions. Fed. R. Crim. P. 30(b).

Jury instructions must be restricted to issues and facts supported by the proof. *United States v. Gosser*, 339 F.2d 102, 109 (6th Cir. 1964). Jury instructions should not include unnecessary information because they can cause confusion and disrupt the jury's resolution of questions of fact. *United States v. Salliey*, 360 F.2d 699 (4th Cir. 1966). However, the Court has an obligation to instruct the jury as to every essential element of the offense charged and the failure to do so constitutes error. *Screws v. United States*, 325 U.S. 91 (1945); *see Neder v. United States*, 527 U.S. 1 (1999). Accuracy of a definition is critical, and the clarity of the evidence establishing an element of a crime does not relieve the Court of its duty to define the element. *United States v. Hiscott*, 586 F.2d 1271 (8th Cir. 1978); *see United Brotherhood of Carpenters and Joiners of America v. United States*, 330 U.S. 395 (1947). Defendants are not entitled to have a particular version of jury instructions presented to the jury. *United States v. Claxton*, 276 F.3d 420 (8th Cir. 2002); *United States v. Sinclair*, 74 F.3d 753 (7th Cir. 1996). Instead, they are only entitled to a fair and accurate statement of the law. *Id.*

In this case, the defendant proposes a limited reading of the statute which defines machinegun while the Government has requested that this statute be provided to the jury in its entirety. This statute reads,

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and

> exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). Most courts that have examined the definition of machinegun in this statute have interpreted it to include a total of four definitions, *i.e.*, the initial definition in the first sentence followed in the second sentence by three independent. *United States v. Carter*, 465 F.3d 658 (6th Cir. 2006); *see United States v. Williams*, 364 F.3d 556, 558 (4th Cir.2004) ("The word 'and' used in the last sentence of section 5845 reflects a purpose to include three separate and individually sufficient categories of weapons within the definition of a machinegun. . . ."); *Thompson/Center Arms Co. v. United States*, 924 F.2d 1041, 1046–47 (Fed.Cir.1991) (ruling that 1968 amendments to machine gun definition added three new categories); *United States v. Bradley*, 892 F.2d 634, 636 (7th Cir.1990) (listing the three additional categories).

At the present time, the Government believes the trial testimony may encompass proof that the defendant possessed a machinegun as defined by one of the three additional categories. Potential Government witnesses have told agents about their involvement in the transfer of "machinegun parts" in a chain of events which led up to the seizure of two machineguns from the defendant's residence. William J. Swift, a Firearms Enforcement Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), will likely testify that he fired these machineguns, they were operational, and they fired ammunition in rapid succession upon a single pull of the trigger. The defense has advised the Government that they intend to call Daniel G. O'Kelly, a retired ATF Special Agent. While the Government is unaware of the specifics of O'Kelly's proposed testimony, his report indicates that he may inform the jury that one of the machineguns recovered from the safe was not operational upon his initial inspection. Specifically, his report asserts that "[i]t was noticeable to me that the bolt [for the M3A1] was not oriented in

4

the receiver as originally designed [and therefore, this gun] was defective." O'Kelly's report adds that he attempted to fire the M3A1 but it misfired on three occasions prior to shooting in rapid succession.

Based on this proof, the jury could choose to accredit proof from Government witnesses and/or O'Kelly's testimony that the M3A1 was not operational and merely constituted a "frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b). Thus, the Government believes that a full reading of the statute would be a fair and accurate statement of the law which would be supported by the proof presented at trial.

Thus, the Government requests, at the close of the proof, this Court evaluate the evidence and include the full definition of machinegun if such a reading is supported by the evidence.

### III. LEGAL AUTHORITY REGARDING THE GOVERNMENT'S USE OF MR. BOSTICK'S PROFFER.

Jerry Bostick, the defendant, may seek to introduce evidence contradicting his proffer statements during defense counsel's cross-examination of government witnesses. However, if Bostick's defense counsel does so, the government may properly introduce his proffer statements. The terms of Bostick's proffer agreement provide, "…if [Bostick] should subsequently…present a position inconsistent with the proffer, nothing shall prevent the government from using the substance of the proffer…at trial for impeachment or in rebuttal..." During his proffer interview, Bostick admitted that he purchased machineguns and knew they were machineguns when he purchased them. A defendant's proffer statements are generally inadmissible under Fed. R. Evid. 410. *United States v. Shannon*, 803 F.3d 778, 783 (6th Cir. 2015). However, a defendant may

waive his Rule 410 objections. *Id.* Such waivers may include evidence the defendant offers during cross-examination of witnesses. *See id*. at 784. Because the defense counsel's cross-examination of the government's witness produced testimony inconsistent with the defendant's proffer statements, the court in *Shannon* held that the government properly used the defendant's proffer statements to rebut this evidence. *See id*. at 786. While Bostick's proffer statements are generally inadmissible in this case, he will waive his Rule 410 objections if he presents a position inconsistent with his proffer statements, according to the terms of his proffer agreement. Bostick may waive these objections if he introduces contradictory evidence during the cross-examination of government witnesses. Similar to how the government properly used the defendant's proffer statements to rebut the defense counsel's production of inconsistent testimony in *Shannon*, the government may properly use Bostick's proffer statements to rebut any evidence the defense counsel produces during cross-examination that contradicts Bostick's admission that he both purchased machineguns and knew they were machineguns when he purchased them.

Respectfully Submitted,

**JACK SMITH**
Acting United States Attorney for the
Middle District of Tennessee

 *s/ Joseph P. Montminy*
JOSEPH P. MONTMINY
Assistant United States Attorney
110 9th Avenue South - Suite A-961
Nashville, Tennessee 37203-3870
Telephone: 615-736-5151

## CERTIFICATE OF SERVICE

       I hereby certify that, on July 12, 2017, I electronically served one copy of the response with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to the Defendant's attorney, J. Alex Little.

       **s/ *Joseph P. Montminy***
       JOSEPH P. MONTMINY
       Assistant United States Attorney